IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 182 MR WCM

| | |
|---|---|
| JENNIFER LONGO, | ) |
|     Plaintiff, | ) |
| V. | )    MEMORANDUM AND RECOMMENDATION |
| ELIZABETH ASPINWALL, *individually and in her official capacity as an employee of Western Carolina University*, and WESTERN CAROLINA UNIVERSITY | ) |
|     Defendants. | ) |

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 5), which has been referred to the undersigned pursuant to 28 U.S.C. § 636.

I. Procedural Background

On June 1, 2020, Plaintiff filed her Complaint in the Superior Court of Jackson County, North Carolina. Doc. 1-1.[1]

Defendants removed the case on July 8, 2020 (Doc. 1) and subsequently

---

[1] Plaintiff previously filed a similar case which was dismissed without prejudice by stipulation. Longo v. Aspinwall et al, 1:19-cv-00058-MOC-WCM.

1

filed their Motion to Dismiss and a supporting brief. Docs. 5 & 6. Plaintiff has responded and Defendants have replied. Docs. 7, 8 & 9.

## II. Summary of Plaintiff's Allegations

As discussed in greater detail below, inconsistencies exist in Plaintiff's allegations. Nonetheless, she alleges, in summary, as follows:

Plaintiff Jennifer Longo ("Plaintiff") first attended Defendant Western Carolina University ("WCU") for her undergraduate education; she began in the Fall of 2012 and graduated in the Spring of 2016. Doc. 1-1 at ¶ 13. During her undergraduate years, Plaintiff was diagnosed with an eating disorder by a doctor at WCU's Health Center and began receiving counseling and psychological treatment at the Health Center. Id. at ¶ 14. In addition, in April 2016, Plaintiff was diagnosed with major depressive disorder. Id. at ¶ 15.

Plaintiff began the Doctor of Physical Therapy Program ("DPT Program" or "Program") at WCU in August 2016. Id. at ¶ 16. That Fall, Plaintiff met with Dr. Lunnen, the Program's department head, and discussed her diagnosis and issues with depression and anxiety. Id. at ¶ 17.

In October 2016, Plaintiff began attending counseling and receiving psychological services at the WCU Health Center. Id. at ¶ 18.

Plaintiff began the Spring 2017 semester but decided to "take medical withdrawal due to her depression and anxiety." Id. at ¶ 20. Before withdrawing, Plaintiff met with the interim department head, Dr. Carzoli, to

2

discuss her reasons for doing so. Id. At the time she withdrew, Plaintiff was in good academic standing. Id.

After withdrawing from WCU, Plaintiff attended a one-month outpatient program at a hospital in Virginia, where she was sexually assaulted. Id.

Plaintiff returned to Cullowhee, North Carolina in February 2017, and was prescribed medications for sleep disorder and major depressive disorder. Id. at ¶ 21.

Plaintiff then attended an inpatient treatment program in Florida from May 2017 until September 2017. Id. at ¶ 22

Plaintiff resumed the DPT Program at WCU in January 2018. Id. at ¶ 23. However, she was sexually assaulted in Asheville during January or February 2018.[2] Id.

In February 2018, Plaintiff met with the head of the DPT Program, Dr. David Hudson. Id. at ¶ 24. During that meeting, Dr. Hudson mentioned the Program's essential functions requirements and informed Plaintiff that she had to meet those requirements, even though Plaintiff was in good academic standing. Id. Plaintiff alleges upon information and belief that Dr. Hudson and other faculty members in the Program had received information regarding Plaintiff's mental disability and issues with depression and anxiety. Id.

---

[2] This event does not appear to be related to the DPT Program.

Plaintiff also alleges upon information and belief that there had been no major complaints from faculty or other students about her behavior or demeanor. Id.

Plaintiff further alleges that, later that Spring, she was involuntarily committed by her father, terminated from the DPT Program, and subjected to a second involuntary commitment as the result of a petition filed by Defendant Aspinwall, who was employed by WCU. Id. at ¶¶ 26, 31, 33, 34.

### III. Discussion

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192.

Here, however, an analysis of Plaintiff's Complaint is problematic because the Complaint contains material factual allegations that are internally inconsistent.

Plaintiff alleges that on March 1, 2018, she "was involuntarily committed by her father and stayed for three (3) days at Harris Regional Hospital in Sylva, North Carolina and a further three (3) days at Haywood Regional Medical Center in Waynesville, North Carolina causing Plaintiff to miss a week of classes, labs, and mid-term examinations." Doc. 1 – 1 at ¶ 26. She goes

4

on to allege that she made up her missed mid-term examinations and made good grades on those tests. Id. at ¶ 28. Plaintiff alleges that at this point WCU had notice of her disabilities. Id. at ¶ 30.

Plaintiff then alleges that she received a letter from the Department Head of Physical Therapy dismissing her from the DPT Program and that at the time she was compliant with her outpatient mental health requirements "and in good academic standing as she had just completed her mid-term exams…." Id. At ¶ 31. She also alleges that, the same day she was dismissed from the Program, "and after said dismissal," Aspinwall filed a petition to have Plaintiff involuntarily committed. Id. at ¶ 33. Plaintiff alleges upon information and belief that "Aspinwall filed said involuntary commitment without alleging any additional facts that postdated the first involuntary commitment filed by Plaintiff's father." Id. Plaintiff alleges that after Aspinwall filed the second involuntary commitment, Plaintiff was taken to Raleigh, North Carolina for approximately one week before the commitment expired and she was released. Id. at ¶ 34.

These allegations indicate Plaintiff contends that her dismissal from the Program and second involuntary commitment (as a result of a petition filed by Aspinwall) occurred at a separate and later time than her first involuntary commitment (which resulted from a petition filed by Plaintiff's father). See also Plaintiff's Memorandum, Doc. 8 at 2 ("Plaintiff was involuntarily committed

5

by her father causing Plaintiff to miss classes and exams in Spring of 2018. <u>Later in the Spring 2018 Semester</u> Plaintiff was dismissed from the Program.") (emphasis added).

Such allegations, however, are directly contradicted by other allegations and information in the record.[3]

Plaintiff's Complaint states specifically that Plaintiff was involuntarily committed by her father on March 1, 2018, and that, on March 2, 2018, she received a letter from David Hudson, Professor and Department Head of Physical Therapy, dismissing her from the Program. <u>Id</u>. at ¶¶ 26, 31. The letter itself, which appears as Exhibit A to Plaintiff's Complaint, is dated March 2, 2018, and shows that it was hand-delivered to Plaintiff.

Further, the Findings and Custody Order attached as Exhibit 1 to Defendants' filings was signed by a Jackson County magistrate at 9:37 AM on March 2, 2018. Doc. 6-1. While that document itself does not indicate whether it was issued pursuant to a petition submitted by Aspinwall (as opposed to by Plaintiff's father), the dating is consistent with Plaintiff's allegation that

---

[3] A copy of Plaintiff's dismissal letter is attached to the Complaint (Doc. 1-1 at 11-12), and a copy of a "Findings and Custody Order Involuntary Commitment" form has been submitted by Defendants in connection with their Motion to Dismiss (Doc. 6-1). These documents may be considered in addition to Plaintiff's Complaint. <u>See</u> <u>Philips v. Pitt Cty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

Aspinwall filed a petition "the same day Plaintiff was dismissed from the DPT Program." In other words, this information indicates that Plaintiff's dismissal from the Program and the filing of Aspinwall's petition occurred immediately after the involuntary commitment by Plaintiff's father.

These scenarios appear to be directly contradictory. It is not clear how Plaintiff could have been involuntarily committed for six days in Sylva and Waynesville beginning on March 1, 2018, been released from that commitment, taken several mid-term exams, and then been available to receive her dismissal letter and be subject to a second involuntary commitment by Aspinwall on March 2, 2018.

As noted above, a plaintiff's factual allegations must be taken as true and considered in the light most favorable to the plaintiff at the motion to dismiss stage. However, here, Plaintiff's allegations are in direct conflict, and these inconsistencies pertain to material issues that impact an analysis of the sufficiency of Plaintiff's claims.[4]

---

[4] By way of example, as noted, Plaintiff alleges that Aspinwall filed her petition for involuntary commitment "without alleging any additional facts that postdated the first involuntary commitment filed by Plaintiff's father." Doc. 1-1 at ¶ 33. The significance of this allegation is influenced in part by the timing of the involuntary commitment petitions—that is, whether Aspinwall's petition was filed at the same time as the petition filed by Plaintiff's father, or, after a significant amount of time had passed and Plaintiff had returned to school and made good marks on the examinations she missed while she was committed as a result of her father's petition.

7

Under these circumstances, the undersigned is reluctant to attempt to determine which construction of the facts would be most favorable to each of Plaintiff's claims and consequently will recommend that Defendant's' Motion to Dismiss be denied without prejudice and that Plaintiff be directed to file an amended complaint addressing these issues.[5]

## IV. Recommendation

For the reasons stated, the undersigned **RECOMMENDS**:

1. That Defendant's Motion to Dismiss (Doc. 6) be **DENIED WITHOUT PREJUDICE**; and
2. That Plaintiff be **DIRECTED** to file an amended complaint promptly.

Signed: December 8, 2020

W. Carleton Metcalf
United States Magistrate Judge

---

[5] The undersigned has closely considered whether to recommend that the Motion to Dismiss be granted. Cf. Graves v. Prestridge, No. 1:18cv1274, 2019 WL 142343, at *4 (E.D. Cal. Jan. 9, 2019) (dismissing complaint with leave to amend to allege facts that are internally consistent and collectively support Plaintiff's claims). Although Rule 8(d)(2) allows a party "to set forth inconsistent statements either alternatively or hypothetically," 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1283 (3d ed. 2010), Plaintiff's Complaint appears to allege claims that are simultaneously based on inconsistent and competing facts. The undersigned, however, concludes that allowing Plaintiff to amend to address these inconsistencies is more appropriate here. See In re: TMST, Inc. v. JPMorgan Chase Funding, 610 B.R. 807, 825 (Bktcy. D.Md. 2019) ("The Court will not, at this early stage in the case, dismiss counts on their face because they appear to be inconsistent, either factually or legally.").

8

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).